IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:19-CR-30-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ROSALIND CHANTICE JACKSON, | ) | |
| Defendant. | ) | |

On July 10, 2020, Rosalind Chantice Jackson ("Jackson") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed a memorandum and records in support [D.E. 38, 41, 42, 44]. On October 30, 2020, the United States responded in opposition [D.E. 47]. As explained below, the court denies Jackson's motion.

I.

On June 20, 2019, pursuant to a waiver of indictment and with a written plea agreement, Jackson pleaded guilty to willfully aiding and assisting in the preparation of false income tax returns (count one) and making and subscribing to a false income tax return (count two). See [D.E. 13, 17]. On October 9, 2019, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 31, 33, 34]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Jackson's total offense level to be 19, her criminal history category to be III, and her advisory guideline range to be 37 to 46 months' imprisonment. See [D.E. 34] 1. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Jackson to 37 months' imprisonment. See [D.E. 33] 2.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another

2

extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1]  Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

   (C) Family Circumstances.—

   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020);

---

  (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

As for Jackson's request for compassionate release, Jackson contends that she has exhausted her administrative requirements. See [D.E. 38] 2; [D.E. 41] 3. In April 2020, Jackson submitted a request for compassionate release to the Warden at FMC Carswell, which was denied on April 28, 2020. See [D.E. 38-2] 1; [D.E. 41-3] 1. On May 6, 2020, Jackson filed a request for reconsideration, which was denied on May 12, 2020. See [D.E. 38-2] 2; [D.E. 41-3] 2. Jackson appealed the denial on May 18, 2020, which was denied on June 15, 2020. See [D.E. 41-3] 3. Jackson again appealed the denial on July 9, 2020, which was once more denied on July 24, 2020. See id. at 4. Moreover, the government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Jackson's claim on the merits.

Jackson seeks compassionate release pursuant to section 3582(c)(1)(A). In support of her request, Jackson cites the COVID-19 pandemic, her race, and her health conditions, including obesity, diabetes, hypertension, hyperlipidemia, anemia, glaucoma, and complications from necrotizing fasciitis. See [D.E 38] 1; [D.E. 38-3]; [D.E. 41] 1–2, 5–8; [D.E. 42]; [D.E. 44]. Jackson also cites the conditions at FMC Carswell, her rehabilitation efforts, her release plan, and that she served over 29% of her sentence. See [D.E. 41] 2, 10–11.

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). While Jackson states that she suffers from obesity, diabetes, hypertension, hyperlipidemia, anemia, glaucoma, and complications from necrotizing fascitis, she has not demonstrated that she is not going to recover from these conditions or that they cannot be treated while Jackson serves her sentence. Accordingly, reducing Jackson's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Jackson's health conditions, rehabilitation efforts, and release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Jackson's sentence. See United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Jackson is 45 years old and engaged in very serious criminal behavior between 2011 and 2016. See PSR ¶¶ 9–21. Jackson conspired with numerous individuals to defraud the Internal Revenue Service ("IRS") by filing fraudulent tax returns. See id. Jackson is personally responsible for filing 54 false income tax returns, resulting in a tax loss of $379,342. See id. at ¶ 13. In addition to her clients' returns, Jackson also filed false income tax returns in her own name. See id. at ¶¶ 15–18. Altogether, Jackson is responsible for $1,123,933 in tax loss. See id. at ¶ 21. Moreover, Jackson is a recidivist who has progressed from serious drug offenses to serious white collar crime. See id. at ¶¶ 26–32. Jackson has also failed to abide by court-ordered supervision. See id. ¶¶ 25–26. The court also has considered Jackson's potential exposure to COVID-19, her health conditions, her

6

rehabilitation efforts, and her release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Jackson, the section 3553(a) factors, Jackson's arguments, the government's persuasive response, and the need to punish Jackson for her criminal behavior, to incapacitate Jackson, to promote respect for the law, to deter others, and to protect society, the court declines to grant Jackson's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Jackson's request for home confinement, Jackson seeks relief under the CARES Act. See [D.E. 38, 44]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Jackson's request for home confinement.

II.

In sum, the court DENIES Jackson's motion for compassionate release [D.E. 38], and DISMISSES Jackson's request for home confinement.

SO ORDERED. This 27 day of January 2021.

JAMES C. DEVER III
United States District Judge